# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANA SEALANDER, | : | |
| | : | 17-cv-594 |
| Plaintiff | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| RYAN BRAGUE, individually and | : | |
| in his official capacity, LAURA KITKO, | : | |
| individually and in her official capacity, | : | |
| THE CITY OF WILLIAMSPORT, and | : | |
| MARTIN WADE, individually and in his | : | |
| official capacity, | : | |
| Defendants. | : | |

## <u>MEMORANDUM AND ORDER</u>
### November 7, 2019

Presently pending before this Court is a Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendant Martin Wade ("the Motion"). (Doc. 56). For the reasons that follow, we shall grant the Motion.

## I.    FACTUAL BACKGROUND

We take the following from the Plaintiff's Complaint and assume it to be true, as we must.

The instant case alleges a variety of constitutional and state law claims against several Williamsport police officers, the City of Williamsport, Pennsylvania, and a Lycoming County Assistant District Attorney. These claims

1

arise from an alleged altercation which took place in Williamsport on November 20, 2016 between private individuals, during which the Plaintiff was shot with a taser gun by a Williamsport Police Officer ("the November 20 incident"). Plaintiff was later charged with several criminal counts stemming from this encounter. He alleges violations of his civil rights connected with the incident. (Doc. 48).

The instant Motion concerns claims Plaintiff brings against Defendant Martin Wade, an Assistant District Attorney for Lycoming County. Plaintiff alleges prosecutorial misconduct by Defendant Wade for decisions he made in prosecuting Plaintiff for the events of November 20. His claims include: violation of 42 U.S.C. §1983 for malicious prosecution (Count VIII); violation of state law for malicious prosecution (Count XI); and state law abuse of process (Count XII). The instant claims do not involve the facts of the November 20 incident. Therefore, and because Defendant Wade's involvement in the case began nearly two years *after* the Plaintiff's initial encounter with the Williamsport police, we need not go into further detail concerning the events of November 20. We will, however, recite Plaintiff's allegations regarding his criminal prosecution by Defendant Wade.

Plaintiff was charged in a two-count criminal complaint with Disorderly Conduct in violation of 18 Pa. C.S. §5503(a)(1), as both a Misdemeanor of the Third Degree and as a Summary Offense. (Doc. 48 at ¶ 25). The third-degree misdemeanor carried a penalty of imprisonment of up to one year and a fine of

$2,500.00. *Id*. Plaintiff pleaded guilty to the Summary Offense and was ordered to pay a $25.00 fine and costs of $164.50. *Id.* at ¶ 26.

After Plaintiff pleaded guilty, discovery revealed that one of the other individuals involved in the November 20 incident, Christopher Reed, was the cousin of Plaintiff's charging police officer, Officer Brague. *Id.* at ¶ 27. Officer Brague apparently concealed this fact during the criminal proceedings. *Id.* Reed was not criminally charged in relation to the November 20 incident. *Id.* at ¶ 23.

Plaintiff proceeded to withdraw his guilty plea based upon this information. *Id.* at ¶ 27. On or about March 5, 2018, Plaintiff filed a Request for Permission to File an Appeal Nunc Pro Tunc for the Purpose of Filing a Petition to Withdraw his Guilty Plea in the Lycoming County Court of Common Pleas. *Id.* at ¶ 28. The Court granted that request on April 19, 2018, without prejudice to the right to re-file charges. *Id.* at ¶ 29. This Order was the result of an agreement between the Plaintiff and the Commonwealth. *Id.* Thereafter Defendant Wade became the prosecuting attorney on Plaintiff's criminal case. *Id.* at ¶ 83.

Plaintiff alleges that Defendant Wade was hesitant to re-file the criminal charges based upon text messages he had learned of between Officer Brague and the alleged victim, his cousin Christopher Reed. *Id.* at ¶ 84. Nevertheless, Plaintiff claims, the Williamsport Police Department "applied pressure on Defendant Martin Wade to pursue the refiling of charges against Plaintiff. . .for the purpose of

assisting the Williamsport Police Department to obtain leverage against Plaintiff Dana Sealander because of Sealander's pending civil rights lawsuit" against the City and Police Department. *Id.* at ¶ 85; 101. Defendant Wade eventually agreed to re-file the charges, but informed the Williamsport Police Department that Officer Brague would not be allowed to act as the prosecuting officer. *Id*. at ¶ 86. Officer Kitko was then approved to act in that capacity. *Id*. at ¶ 87.

On May 2, 2018, Officer Kitko re-filed a criminal complaint against Plaintiff, charging him with Disorderly Conduct in violation of 18 Pa. C.S. §5503(a)(1) as Misdemeanor of the Third Degree; Disorderly Conduct in violation of 18 Pa. C.S. §5503(a)(1) as a Summary Offense; and Harassment in violation of 18 Pa. C.S. §2709(a)(1) as a Summary Offense. *Id.* at ¶ 30.

Plaintiff claims that Defendant Wade had access to depositions taken in the instant civil action which Defendant Wade used in deciding to refile charges against Plaintiff, including the addition of a new Harassment charge. *Id*. at ¶ 88; 95. Those depositions were "purportedly. . . very clear in [Christopher] Reed's assertion that Plaintiff Dana Sealander did not shove Reed and that it was Reed who shoved Plaintiff Dana Sealander to the ground twice." *Id*. at ¶ 95. Defendant Wade allegedly continued to pursue Plaintiff's conviction despite knowing that the depositions "were more than sufficient to apprise Defendant Wade of the fact that Plaintiff Dana Sealander did not commit a criminal act, but rather was the victim of

an assault and battery at the hands of Christopher Reed, cousin to Defendant Ryan Brague." *Id.* at ¶ 96-97.

Plaintiff further alleges that Defendant Wade "did not share the transcript of depositions with [Officer] Kitko despite her status as the prosecuting officer." *Id.* at ¶ 90. Instead, Defendant Wade allegedly instructed Officer Kitko as to what facts she should include in her Affidavit of Probable Cause, without giving her the opportunity to review the evidence herself. *Id.* at ¶ 88.

On September 18, 2019 the Lycoming County Court of Common Pleas, upon motion by the Commonwealth, dismissed the charges of Disorderly Conduct in violation of 18 Pa. C.S. §5503(a)(1) as Misdemeanor of the Third Degree and Disorderly Conduct in violation of 18 Pa. C.S. §5503(a)(1) as a Summary Offense. *Id*. at ¶ 31. The Court also directed that a non-jury trial be scheduled for the remaining Harassment charge. *Id.* Plaintiff was found Not Guilty on the Harassment charge on November 1, 2018. *Id.* at ¶ 32.

Plaintiff now brings the instant claims in his Second Amended Complaint, which newly named Defendant Wade as a party. Defendant Wade filed the instant Motion to Dismiss the claims against him for failure to state a claim for which relief can be granted on August 20, 2019. (Doc. 56). Defendant Wade filed a Brief in Support on September 3, 2019. (Doc. 57). On September 27, 2019, Plaintiff filed a Brief in Opposition. (Doc. 63). Defendant Wade failed to file a Reply by October

11, 2019, as is required by Local Rule 7.7. The Motion is therefore ripe for disposition.

## II. STANDARD OF REVIEW—Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked

6

by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

7

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. DISCUSSION

Defendant Wade argues that Plaintiff's §1983 claim must fail because Defendant Wade is protected by absolute immunity for actions taken in his role as a prosecutor for the Commonwealth. (Doc. 57 at 2). Defendant Wade also argues that Plaintiff's state law claims for malicious prosecution and abuse of process are barred by state law high public official immunity for the same reasons.[1] (Doc. 57 at 17). Defendant Wade also maintains that, even were his claims not barred by immunity, Plaintiff has failed to state a claim for which relief may be granted on any of his counts. Because we find that the entirety of Plaintiff's claims against Defendant Wade are barred by absolute and high public official immunity, we need

---

[1] In his briefing, Plaintiff concedes that his state law malicious prosecution claim must fail because Pennsylvania Courts have recognized that high public official immunity applies to assistant district attorneys for conduct taken in the course of their official duties. (Doc. 63 at 11); (citing *Durham v. McElynn,* 772 A.2d 68 (Pa. 2001). We will therefore consider Plaintiff's state law malicious prosecution claim as withdrawn and will dismiss it accordingly.

not reach the sufficiency of Plaintiff's pleading. We will therefore dismiss Defendant Wade as a party to this action.

In response, Plaintiff contends that his §1983 malicious prosecution claim is not barred because state prosecutors are entitled to absolute immunity only for conduct that is "intimately associated with the judicial phase of the criminal process." (Doc. 63 at 10); (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Defendant Wade, Plaintiff argues, was acting:

> In his capacity as an investigator taking the lead in the investigation as to charges to be filed against Dana Sealander[,] as evidenced by his withholding of transcripts of testimony of numerous eye witnesses from Defendant Laura Kitko, who he directed as to what charges to file, what facts to allege, and the identity of the only witness she was to interview. (Doc. 63 at 11).

Therefore, Plaintiff asks us to find that Defendant Wade is not covered by absolute immunity for his actions. Plaintiff likens Defendant Wade's actions to giving legal advice to the police on whether probable cause to arrest existed, or to whether a suspect could be hypnotized for interrogation, both of which the Supreme Court has held are *not* acts that are covered by absolute immunity. (Doc. 63 at 10); (citing *Burns v. Reed*, 500 U.S. 478 (1991)). Plaintiff protests that Defendant Wade's actions in bringing charges against Plaintiff are more akin to investigative and administrative activities than they are to the "judicial phase of the criminal

process," and so asks us to find that his §1983 claim is not barred by absolute immunity.

Plaintiff also contends that Defendant Wade is not entitled to high public official immunity from his state law abuse of process claim. Plaintiff reasons that "the gravamen of an abuse of process claims is that process is perverted and used for an improper basis." (Doc. 63 at 11). Here, Plaintiff argues, Defendant Wade went outside the scope of his official duties as an Assistant District Attorney "to pursue criminal charges for the purpose of assisting police officers in pending civil rights cases," and therefore Defendant Wade should not enjoy high public official immunity for these actions. *Id.* at 12. As previously stated, we disagree and will find Plaintiff's claims against Defendant Wade barred by absolute and high public official immunity. We take each of Plaintiff's two contested counts in turn.

### a. §1983 Claim

A defense of absolute immunity for prosecutorial misconduct is properly considered under a Rule 12(b)(6) motion to dismiss. *Kulwicki v. Dawson,* 969 F.2d 1454, 1461-62 (3d Cir.1992).[2] A prosecutor bears the "heavy burden" of establishing entitlement to absolute immunity. *Light v. Haws,* 472 F.3d 74, 80–81 (3d Cir.2007) (quoting *Forsyth v. Kleindienst,* 599 F.2d 1203, 1212 (3d Cir.1979)).

---

[2] "The court's duty at the 12(b)(6) stage of the proceedings is only to construe the *presented* facts in the light most favorable to the plaintiff. Where the presented facts fail to make out a case for protection, official immunity is denied." *Kulwicki* 969 F.2d at 1461-62.

10

Considering the Supreme Court's "quite sparing" recognition of absolute immunity to § 1983 liability, we begin with the presumption that qualified rather than absolute immunity is appropriate. *Carter v. City of Philadelphia,* 181 F.3d 339, 355 (3d Cir.1999) (citing *Burns v. Reed,* 500 U.S. 478, 486–87 (1991)).

To overcome this presumption, a prosecutor must show that he or she was functioning as the state's advocate when performing the actions in question. *Yarris v. County of Delaware,* 465 F.3d 129, 136 (3d Cir. 2006). This inquiry focuses on "the nature of the function performed, not the identity of the actor who performed it." *Light,* 472 F.3d at 78 (quoting *Hughes v. Long,* 242 F.3d 121, 125 (3d Cir.2001)). Under this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity. *Giuffre v. Bissell,* 31 F.3d 1241, 1251 (3d. Cir. 1994) (quoting *Imbler* 424 U.S. at 430; *Rose v. Bartle,* 871 F.2d 331, 346 (3d Cir.1989). Thus, immunity attaches to actions "intimately associated with the judicial phases of litigation," but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings. *Giuffre,* 31 F.3d at 1251 (quoting *Imbler,* 424 U.S. at 430) (internal quotation omitted); *see also Rose,* 871 F.2d at 346 (contrasting the prosecutor's "quasi-judicial" role from his "administrative/investigative" role). Importantly, "in initiating a prosecution and in presenting the State's case, the

prosecutor is immune from a civil suit for damages under §1983." *Imbler,* 424 U.S. at 430–31.

The sole prosecutorial function to which Plaintiff objects is Defendant Wade's re-initiation of criminal charges against him. (Doc. 63 at 11). Plaintiff asserts that there was no probable cause to re-file the charges. *Id.* Plaintiff further contends that Defendant Wade's interactions with Officer Kitko concerning her Affidavit of Probable Cause are "administrative" or "investigative" functions not subject to absolute immunity. *Id.* Finally, Plaintiff believes the charges were being brought as improper retaliation for Plaintiff's civil case. *Id.* All of these allegations, Plaintiff alleges, support a claim of prosecutorial misconduct under §1983 that does not merit absolute immunity.

When determining whether a particular prosecutorial function is "quasi judicial" or "administrative," the Supreme Court has dictated three factors to consider: 1) whether there is "a historical or common law basis for the immunity in question;" 2) whether performance of the function poses a risk of harassment or vexatious litigation against the official; and 3) whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct. *Mitchell v. Forsyth,* 472 U.S. 511, 521–22 (1985). In the present case, however, we need not analyze Attorney Wade's prosecutorial functions under these factors at great length—the Third Circuit has already done so.

The Third Circuit has held that "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki* 969 F.2d at 1463-64. Therefore, Plaintiff's claim for prosecutorial misconduct under §1983 due to lack of probable cause must fail. Defendant Wade had the discretion to bring criminal charges against Plaintiff as an integral function of his duty as a prosecutor. He cannot now face liability for those actions, even if he was aware of a lack of probable cause.

Next, Plaintiff attempts to argue that because Defendant Wade explicitly dictated to Officer Kitko as to what facts she should include in her Affidavit of Probable Cause and did not provide her full access to all materials in his possession, he removed himself from "quasi-judicial" functions into the realm of "investigation" or "administration" and so should not be protected by absolute immunity. We disagree. "A prosecutor's direction to a police officer to file charges is so intimately associated with the judicial phase of litigation as to merit protection from liability." *Id*. In bringing criminal charges against Plaintiff, or, indeed, against any criminal defendant, Defendant Wade would be required to interface with the charging officer, provide facts relevant to the charge, and assist

in shaping the officer's affidavit.[3] These activities are so integral to the bringing of criminal charges in a court of law that we must find them to be protected by absolute immunity. Again, we emphasize that the Supreme Court has directed us to look at the *function* being performed, not the *motivations* behind it, nor the *identity* of the actor. *Imbler* 424 U.S. at 430. The crafting of criminal charges to be brought against a defendant is an integral *function* of our criminal justice system, and as such a prosecutor is absolutely immune from suit regarding actions taken in furtherance of that function

Plaintiff further argues that Defendant Wade should not have absolute immunity for his actions because he brought the charges for the explicit purpose of retaliating against Plaintiff for his civil suit. Because, Plaintiff contends, these acts were in bad faith, we should not provide absolute immunity to Defendant Wade. We again must disagree.

For the purposes of this 12(b)(6) motion, we assume that Plaintiff's allegations are true. Even so, they still do not defeat Defendant Wade's absolute immunity. It may be that Defendant Wade filed charges against Plaintiff as a result of improper motives. However, a "prosecutor is entitled to absolute immunity 'while performing his official duties' as a [sic] officer of the court, even if, in the

---

[3] Indeed, the Third Circuit has held that causing a police officer to file criminal charges is a "core prosecutorial function." *Kulwicki* 969 F.2d at 1464.

performance of those duties, he is motivated by a corrupt or illegal intention."
*Jennings v. Shuman*, 567 F.2d 1213, 1221-22 (3d. Cir. 1977). We therefore need only conclude that in bringing charges against Plaintiff, Defendant Wade was fulfilling an essential function of his judicial role as a prosecutor. We cannot examine his motives. In so doing, we recognize the greater societal goal of "protecting the judicial process by preventing perpetual suits against prosecutors for the performance of their duties." *Barrett v. United States*, 798 F.2d 565, 573 (2d. Cir. 1986).

In sum, Plaintiff's §1983 claim cannot survive absolute immunity. Should Plaintiff truly believe that Defendant Wade acted improperly, this is not the correct forum for airing such concerns. However, we direct Plaintiff's attention to the third factor we use to determine whether a function is "quasi-judicial" to support absolute immunity: "whether there exist alternatives to damage suits against the official as means of redressing wrongful conduct." *Mitchell*, 472 U.S. at 521–22. Here, there are most certainly "alternatives to damage suits." "Harm to a falsely-charged defendant is remedied by safeguards built into the judicial system—probable cause hearings, dismissal of the charges—and into the state codes of professional responsibility." *Burns*, 500 U.S. 478 at 485. We would remind Plaintiff of the other, more appropriate, avenues open to him to address his

grievances, but will find Defendant Wade absolutely immune from §1983 claims regarding his bringing of charges against Plaintiff.

### b. State Law Abuse of Process Claim

High public official immunity is the Pennsylvania state law equivalent of absolute immunity to federal §1983 claims. Pennsylvania courts have held that "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001). Such immunity exempts a high public official from all civil suits for damages provided that "the actions are taken in the course of the official's duties or powers within the cope of his authority." *Id.*

The Pennsylvania Supreme Court has explicitly applied such immunity to assistant district attorneys acting in the course of their duties:

> Assistant district attorneys, however, are essential to district attorneys in fulfilling responsibilities of their high public offices, to wit, in carrying out the prosecutorial function. To subject assistant district attorneys acting on behalf of the district attorney to liability would deter all but the most courageous and most judgment-proof from vigorously performing their prosecutorial functions, and would inevitably result in criminals going unpunished. . . That interest dictates that assistant district attorneys be immune from suit.

*Durham*, 772 A.2d at 70.

Plaintiff argues that high public official immunity should not apply in this case because "it is clearly not within Defendant Wade's official duties as an

Assistant District Attorney to pursue criminal charges for the purpose of assisting police officers in pending civil rights cases." (Doc. 63 at 11). We therefore must determine whether Defendant Wade's actions in re-filing charges against Plaintiff fell within "the course of his official duties." We must again look to the functions being performed by the prosecutor—here, the preparation and filing of criminal charges—to determine whether the official was acting within the scope of his duties. We cannot examine Defendant Wade's motivations in fulfilling those functions.[4]

Our esteemed former colleague Judge Vanaskie has found that assisting in the filing of a criminal complaint falls within the covered duties of a prosecutor under Pennsylvania law, explicitly with respect to abuse of process claims:

> In the present case, Dr. Gleeson argues that [Attorney] Prevoznik should be liable under. . .abuse of process. . . because he helped draft the affidavit of probable cause and criminal complaint that lead to Plaintiff's arrest and malicious prosecution. Under *Durham,* Mr. Prevoznik is entitled to absolute immunity from [this] state law claim[] because the drafting of the arrest warrant and criminal complaint were taken in the course of his duties as a prosecutor. *See Cherry v. City of Phila.,* No. Civ. A. 04-1393, 2004 WL 2600684, at *7 (E.D. Pa. Nov.15, 2004) (finding Philadelphia district attorney absolutely immune from an intentional infliction of emotional distress claim because the relevant actions were taken within the course

---

[4] Pennsylvania "exempts a high public official from all civil suits for damages arising out of false defamatory statements and *even from statements or actions motivated by malice*, provided the statements are made or the actions are taken in the course of the official's duties or powers." *Smith v. Borough of Dunmore,* 633 F.3d 176, 181 (3d Cir.2011) (quoting *Lindner v. Mollan,* 544 Pa. 487, 677 A.2d 1194, 1195 (Pa.1996) (internal quotation marks omitted)(emphasis added))

17

of her official duties); *Douris v. Schweiker,* 229 F.Supp.2d 391, 402-03 (E.D.Pa.2002) (finding that district attorneys were absolutely immune from abuse of process suit because the alleged withholding of exculpatory evidence occurred during the course of their official duties).

*Gleeson v. Robson*, 2005 WL 1210948, at *34 (M.D. Pa. May 6, 2005), *aff'd sub nom. Gleeson v. Prevoznik*, 190 F. App'x 165 (3d Cir. 2006). Following our colleague's reasoning, we find that Defendant Wade was acting within the scope of his official duties when he re-filed criminal charges against Plaintiff and worked with Officer Kitko to draft her Affidavit of Probable Cause. As stated previously, the filing of criminal charges is essential to the duties of an assistant district attorney. Pennsylvania law dictates that any action falling within the scope of a covered official's duties receives high public official immunity, *even when motivated by malice*. Assuming, *arguendo*, that Defendant Wade's motivations were improper, Plaintiff has still failed to state a viable abuse of process claim. We will dismiss accordingly.

## IV. CONCLUSION

For the foregoing reasons, we shall grant Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, (Doc. 56), in its entirety.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Counts VIII, XI, and XII of Plaintiff's Second Amended Complaint, (Doc. 48), are **DENIED.**

2. Accordingly, Defendant Martin Wade is **DISMISSED** as a party to this action.

                                          <u>s/John E. Jones III</u>
                                          John E. Jones III
                                          United States District Judge